SEYFARTH SHAW LLP
Christian J. Rowley (SBN 187293)
crowley@seyfarth.com
Eric Lloyd (SBN 254390)
elloyd@seyfarth.com
560 Mission Street, 31st Floor
San Francisco, California 94105
Telephone: (415) 397-2823
Facsimile: (415) 397-8549

SEYFARTH SHAW LLP
Bradley D. Doucette (SBN 322611)
bdoucette@seyfarth.com
400 Capitol Mall, Suite 2300
Sacramento, CA 95814-4428
Telephone: (916) 498-0159
Facsimile: (916) 558-4839

Attorneys for Defendant
AIR INTERNATIONAL US, INC.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH WRIGHT II, an individual, | Case No. |
| Plaintiff, | **NOTICE OF REMOVAL** |
| v. | Complaint Filed: May 4, 2023 |
| AIR INTERNATIONAL US, INC.; DOES 1 TO 20; inclusive, | |
| Defendants. | |

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT AIR INTERNATIONAL US, INC.** ("Defendant") hereby removes the above-referenced action from the Superior Court of the State of California for the County of Placer to the United States District Court for the Eastern District of California pursuant to sections 1332, 1441 and 1446 of Title 28 of the United States Code.

I.   **PLEADINGS, PROCESSES, AND ORDERS**

1.   On May 4, 2023, Kenneth Wright II ("Plaintiff") filed an unverified Complaint in the Superior Court of the State of California for the County of Placer, entitled: *Kenneth Wright II, an individual vs. Air International US, Inc.; and Does 1 to 20, inclusive*, Case No. S-CV-0050440 (the "Complaint").

2.   The Complaint alleges ten (10) claims against Air International US., Inc. ("Defendants): (1) Disability Discrimination (Cal. Gov't Code § 12940(a)); (2) Failure to Accommodate (Cal. Gov't Code § 12940(m)); (3) Failure to Engage in the Interactive Process (Cal. Gov't Code § 12940(n)); (4) Wrongful Termination; (5) Failure to Pay Minimum Wage for All Hours Worked; (6) Failure to Provide Meal and Rest Periods; (7) Failure to Provide Accurate Wage Statements; (8) Waiting Time Penalties; (9) Failure to Pay Overtime Wages; and (10) Late Pay During Employment.

3.   Plaintiff served Defendant with a Notice and Acknowledgment of Receipt of the Complaint and Summons on May 8, 2023 via mail.  On May 30, 2023, Defendant served Plaintiff with a signed Notice and Acknowledgment of Receipt of the Complaint and Summons, thereby effectuating service of both.  True and correct copies of the Summons and Complaint, as well as Defendant's signed Notice and Acknowledgment of Receipt, are attached as **Exhibit 1** (hereinafter "Compl.") to the concurrently filed Declaration of Eric M. Lloyd ("Lloyd Dec.").

4.   On June 28, 2023, Defendant filed its Answer to the Complaint in Placer County Superior Court.  A true and correct copy of Defendant's Answer filed in Placer County Superior Court is attached as **Exhibit 2** to the Lloyd Dec.

5.   **Exhibits 1 and 2** constitute all of the pleadings served on Defendant and/or filed by Defendant in the state court action prior to filing this Notice of Removal. (Lloyd Dec. ¶ 4.) Other than a

case management conference set for August 28, 2023, there are no pending hearings currently scheduled in the Placer County Superior Court in the state court action. (*Id.* ¶ 5.)

## II. TIMELESS OF REMOVAL

6. This notice of removal is timely as it is filed less than one year from the date this action was commenced and within thirty days of the service of the Summons and Complaint upon Defendant. 28 U.S.C. § 1446(b); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 119 S. Ct. 1322 (1999) (thirty-day deadline to remove commences upon service of the summons and complaint).

7. The service of process that triggers the 30-day period to remove is governed by state law. *City of Clarksdale v. BellSouth Telecomms., Inc.*, 428 F.3d 206, 210 (5th Cir. 2005) ("Although federal law requires the defendant to file a removal motion within thirty days of service, the term 'service of process' is defined by state law."). Further, the Supreme Court in *Murphy Brothers* held that the time for removal only began once a defendant was formally served with a copy of the complaint . . . A "courtesy copy" sent to the defendant prior to proper service is not sufficient. In California, a party is brought within the Court's jurisdiction by proper service of process in accordance with the provisions of the California Code of Civil Procedure. In a case involving service by mail, service is not effective until a notice of acknowledgment of receipt is signed. *See Lerma v. URS Fed. Support Servs.*, No. 1:11-CV-00536-LJO, 2011 WL 2493764, at *5 (E.D. Cal. June 22, 2011) (finding that an Acknowledgment of Receipt of Summons started the 30 day deadline to remove); *see also Fruciano v. Regents of Univ. of California*, No. 18-CV-04452-JSC, 2018 WL 4219232, at *3 (N.D. Cal. Sept. 5, 2018) (same; "Formal process is whatever process Plaintiff used to effectuate service here: Section 415.30 (mail service on a resident defendant) in the case of the Regents. . . Because each Defendant removed within 30 days of the effective service date, removal was timely."). This Notice of Removal is timely because it is filed within thirty (30) days of effective service of the Summons and Complaint on May 30, 2023. 28 U.S.C. § 1446(b); Cal. Civ. Proc. Code § 415.30. (*See also* Lloyd Decl. Ex. A at 1 [Service of Process Transmittal Summary].)

///
///
///

### III. JURISDICTION BASED ON DIVERSITY OF CITIZENSHIP

8. The Court has original jurisdiction of this action under 28 U.S.C. § 1332(a)(1). As set forth below, this action is removable pursuant to the provisions of 28 U.S.C. section 1441(a) as the amount in controversy is in excess of $75,000, exclusive of interest and costs, and is between citizens of different states.

#### A. Plaintiff Is A Citizen Of California

9. "To show state citizenship for diversity purposes under federal common law a party must (1) be a citizen of the United States, and (2) be domiciled in the state." *Kantor v. Wellesley Galleries, Ltd*., 704 F.2d 1088, 1090 (9th Cir. 1983). A person's domicile is his or her permanent home, where he or she resides with the intention to remain, or to which he or she intends to return. *Kanter v. Warner-Lambert Co*., 265 F.3d 853, 857 (9th Cir. 2001). Residence is prima facie evidence of domicile. *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) (holding that "the place of residence is *prima facie* [evidence of] domicile"); *Fjelstad v. Vitamin Shoppe Indus. LLC*, No. 2:20-CV-07323 ODW (AFMX), 2021 WL 364638, at *3 (C.D. Cal. Feb. 3, 2021).

10. Plaintiff alleges that "[a]t all times relevant in this Complaint, [he] resided in the State of California." (Compl., ¶ 2.) During his employment with Defendant, Plaintiff was employed at Defendant's Auburn, California facility. (Compl. ¶ 8.) Accordingly, Plaintiff was at all relevant times, and still is, a citizen of the State of California.

#### B. Defendant Is Not A Citizen Of California

11. A corporation is deemed to be a citizen of any state in which it has been incorporated and of any state where it has its principal place of business. 28 U.S.C. § 1332(c)(1). The "principal place of business" for the purpose of determining diversity subject matter jurisdiction refers to "the place where a corporation's officers direct, control, and coordinate the corporation's activities .… [I]n practice it should normally be the place where the corporation maintains its headquarters-provided that the headquarters is the actual center of direction, control, and coordination, *i.e.*, the 'nerve center,' and not simply an office where the corporation holds its board meetings[.]" *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93, 130 S.Ct. 1181, 1192 (2010).

12. Defendant is, and was at the time the state court action was instituted, a corporation organized under the laws of the State of Delaware. (Declaration of Kwangtaek Hong, Ph.D. ("Hong. Dec."), ¶ 4.)

13. Further, Defendant's headquarters—where its high-level officers direct, control, and coordinate the corporation's activities— is located in Auburn Hills, Michigan. (Hong Dec. ¶ 5.) Air International's high level corporate officers maintain offices in Michigan, and many of Air International's corporate level functions are performed at the corporate headquarters. (*Id*.) Additionally, many of Air International's executives and administrative functions, including operations, corporate finance and accounting, are directed from the Michigan corporate offices. (*Id.*)

14. Thus, Defendant is now, and was at the time of the filing of this action, a citizen of both the States of Delaware and Michigan within the meaning of 28 U.S.C. section 1332(c)(1).

15. Therefore, complete diversity exists because each party is a resident of a different state.

C. **Residence And Citizenship Of Doe Defendants To Be Disregarded**

16. Plaintiff has also named Does 1 through 20 as defendants. However, pursuant to 28 U.S.C. § 1441(b)(1), the residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. § 1332. See *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (holding that unknown defendants sued as "Does" need not be joined in a removal petition). Thus, the existence of alleged Doe defendants in this case does not deprive this Court of jurisdiction.

17. Accordingly, pursuant to 28 U.S.C. Section 1332(c), Plaintiff and Defendant have diverse citizenships and diversity jurisdiction is proper.

IV. **AMOUNT IN CONTROVERSY**

18. While Defendant denies any liability as to Plaintiff's claims, the amount in controversy requirement is satisfied because "it is more likely than not" that the amount exceeds the jurisdictional minimum of $75,000. S*ee Sanchez v. Monumental Life Ins. Co*., 102 F.3d 398, 404 (9th Cir. 1996). The jurisdictional amount may be determined from the face of the complaint. *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997). When the amount in controversy is not apparent from the face of the complaint, a defendant may state underlying facts supporting its assertion that the amount

1  in controversy exceeds the jurisdictional threshold. *Valdez v. Allstate Ins. Co.,* 372 F.3d 1115, 1117 (9th
2  Cir. 2004).

3      19.    In determining the amount in controversy, the Court must consider the aggregate of
4  general damages, special damages, punitive damages, attorney's fees, and penalties. *Galt G/S v. JSS*
5  *Scandinavia,* 142 F. 3d 1150, 1156 (9th Cir. 1998) (claims for statutory attorney's fees to be included in
6  amount in controversy, regardless of whether such an award is discretionary or mandatory); *Davenport*
7  *v. Mut. Benefit Health & Accident Ass'n*, 325 F.2d 785, 787 (9th Cir. 1963) (punitive damages must be
8  taken into account where recoverable under state law); *Conrad Assocs. v. Hartford Accident & Indem.*
9  *Co.*, 994 F. Supp. 1196, 1198 (N.D. Cal. 1998) ("amount in controversy" includes claims for general and
10 special damages, including attorney's fees and punitive damages).

11     20.    Further, in determining the amount in controversy at the time of removal, the Court is not
12 limited to the amount of damages incurred as of the time of removal, but may look forward in time to
13 damages that can be recovered in the future. *Chavez v. JP Morgan Chase & Co.*, 888 F.3d 413, 417-18
14 (9th Cir. 2018) ("That the amount in controversy is assessed at the time of removal does not mean that
15 the mere futurity of certain classes of damages precludes them from being part of the amount in
16 controversy. In sum, the amount in controversy includes all relief claimed at the time of removal to
17 which the plaintiff would be entitled if she prevails.").

18     21.    Here, considered together, the general and special damages sought by Plaintiff, along
19 with the attorney's fees, punitive damages that might be awarded if Plaintiff prevails, establish by a
20 preponderance of the evidence that the amount in controversy exceeds $75,000.00, exclusive of interest
21 and costs, as required by 28 United States Code section 1332(a).

22     **A.**    **Alleged Economic Damages**

23     22.    Plaintiff seeks to recover economic damages, alleging he suffered "substantial losses in
24 earnings and other employment benefits and has incurred other economic losses." (Compl., ¶¶ 27, 36,
25 44, 54.)

26     23.    According to Defendant's records, Plaintiff, throughout his employment, was a full time
27 employee regularly scheduled to work approximately 40 hours per week or more, and earned an hourly
28

wage of $15.00 per hour. (Hong Dec. ¶ 7.) (*See also* Compl., ¶ 81 (alleging "Plaintiff regularly worked in excess of eight (8) hours a day and/or forty (40) hours per week).)

24. Plaintiff alleges he was terminated on or around February 11, 2021. (Compl., ¶ 12.) If Plaintiff were to prevail on his disability and termination-related claims (first through fourth causes of action), assuming the case went to trial a year from today's date, Plaintiff could obtain an economic damages award of approximately $105,600.00, even if potential overtime and double-time earnings are disregarded (approximately 176 workweeks between February 11, 2021 and June 30, 2024 x 40 hours per week x $15.00 per hour). This amount alone exceeds the jurisdictional minimum, without considering non-economic damages (such as emotional distress or punitive damages, all of which Plaintiff seeks), attorney's fees, allegedly unpaid wages and meal and rest period premiums, and penalties.

25. Since Plaintiff meets this jurisdictional minimum with a reasonable estimate of his back pay damages alone, the amount in controversy exceeds $75,000.

    **B.**    **Alleged Emotional Distress Damages**

26. In addition to lost wages, Plaintiff alleges emotional distress damages. (Compl., ¶¶ 28, 37, 45, 55.)

27. In *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005), as amended on denial of reh'g and reh'g en banc (Feb. 13, 2006), the Ninth Circuit held that a court may consider emotional distress damage awards in similar discrimination cases.

28. California jury verdicts in similar cases often exceed $75,000 for emotional distress damages. *See Ward v. Cadbury Schweppes Bottling Grp.*, 2011 WL 7447633 (C.D. Cal. Dec. 7, 2011) (jury award $1,000,000 to each plaintiff for emotional suffering and physical pain in a discrimination and failure to prevent discrimination or retaliation (among other claims) action); *Welch v. Ivy Hill Corp.*, 2011 WL 3293268 (Los Angeles Sup. Ct.) (award of $1,270,000 in pain and suffering to employee in a discrimination action).

29. Plaintiff's alleged claim for emotional distress only increases the amount in controversy over the $75,000 threshold.

    **C.**    **Failure To Pay Minimum And Overtime Wages**

30. Plaintiff also seeks allegedly unpaid minimum and overtime wages. (*See generally* Compl.) Plaintiff's minimum and overtime wage claims are both subject to a three year statute of limitations. Cal. Code Civ. Proc. § 338(a).

31. Plaintiff alleges Defendant employed him from approximately March 7, 2020 until approximately February 11, 2021. (*Id.* ¶¶ 8, 10.) Given the May 4, 2023 filing of his Complaint, the three year statutory period for Plaintiff's minimum wage and overtime claim began on May 4, 2020. There were approximately 41 weeks between May 4, 2020 and Plaintiff's February 11, 2021 termination. Assuming Plaintiff worked during 37 of these weeks, and that he worked one hour of unpaid time for which he was not paid at least the minimum wage, the amount in controversy for Plaintiff's minimum wage claim would be approximately $481.00 (37 weeks x $13.00 per hour).[1] And, given that Plaintiff seeks liquidated damages pursuant to Cal. Lab. Code § 1194.2 (Compl. ¶ 60), Plaintiff's potential recovery is double that amount, $962.00.

32. Assuming Plaintiff worked one hour of overtime per week for which he was not compensated, Plaintiff would recover $832.50 (37 weeks x $22.50 overtime rate).

**D.**     **Meal And Rest Period Claims**

33. Plaintiff further alleges meal and rest period violations, for which he contends he is owed a premiums of one hour of pay at the regular rate of pay. Cal. Lab. Code § 226.7(c). The statute of limitations for these claims is three years. *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1099 (2007) ("[T]he remedy provided in Labor Code 226.7 constitutes a wage or premium pay and is governed by a three-year statute of limitations."). Accordingly, applying a three year statute of limitations based on the May 4, 2023 filing of the state court action, the three year statutory period for Plaintiff's claims began on May 4, 2020. Assuming Plaintiff worked 37 weeks during the relevant time period, and, that he endured one meal period violation and one rest period violation per week, Plaintiff would recover approximately $1,110 (37 weeks x $15.00 x two premiums per week).

**E.**     **Failure To Provide Accurate Wage Statements**

---

[1] The California minimum wage throughout 2020 was $13.00 per hour. *See* https://www.dir.ca.gov/dlse/faq_minimumwage.htm.

34. Plaintiff may recover a maximum of $4,000 in penalties for wage statement violations. Cal. Lab. Code § 226(e). Accordingly, the amount in controversy for this claim is approximately $4,000.00.

### F. Waiting Time Penalties

35. Plaintiff also contends he is entitled to waiting time penalties because he allegedly did not receive all wages earned upon termination. (Compl. ¶ 77.)

36. An employer that willfully fails to pay all wages due upon termination may be liable for waiting time penalties of up to 30 days' wages. Cal. Lab. Code § 203. The amount in controversy for this claim is therefore approximately $3,600.00 (30 days x 8 hours a day x $15.00 per hour).

### G. Attorney's Fees

37. Both FEHA and the California Labor Code provide for an award of attorney's fees. Cal. Gov't Code § 12965 (c)(6); Cal. Lab. Code § 218.5 (attorney's fees available in connection with claims for unpaid wages). The amount of attorney's fees for purposes of amount in controversy calculations is the expected reasonable attorneys' fees ***through trial***. *Fritsch v. Swift Transp.*, 899 F. 3d 785, 794 (9th Cir. 2018) ("a court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met."). Labor Code section 1194 further entitles employees who receive less than legal overtime pay to recover in a civil action reasonable attorneys' fees and costs. The reasonable amount of attorney's fees may be based upon fee awards in similar cases. *Lyon v. W.W. Grainger Inc.*, 2010 WL 1753194, at *5 (N.D. Cal. Apr. 29, 2010) ("Defendant's use of similar cases to estimate the cost of attorney's fees is sufficient to establish that its estimate is more likely than not correct."); *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1010-11 (2002) (relying on evidence of fee awards in similar cases to determine a reasonable estimate of attorney's fees).

38. Verdicts show that attorney's fees in employment discrimination cases typically exceed $75,000. *See Denenberg v. California Dep't of Trans.*, 2007 WL 2827715 (San Diego County Sup. Ct. Sept. 14, 2006) (attorney's fees award of $490,000 in case alleging discrimination, harassment, and retaliation); *McMillan v. City of Los Angeles*, 2005 WL 3729094 (Los Angeles County Sup. Ct. March

21, 2005) (attorney's fees award of $504,926 in case alleging discrimination and retaliation for filing lawsuit to redress discrimination).

39. Attorney's fees in single plaintiff wage and hour cases typically exceed $75,000. *Lippold v. Godiva Chocolatier, Inc.*, No. C 10-00421 SI, 2010 WL 1526441, at *4 (N.D. Cal. Apr. 15, 2010) (at a rate of $400/hour, attorneys' fees would reach $40,000 after just 100 billable hours, and attorneys handling wage-and-hour cases typically spend far more than 100 hours on the case). *See also Martin v. The Old Turner Inn*, 2003 WL 25333593 (Cal.Sup.2003) (awarding $147,610 in attorneys' fees and costs in a single-plaintiff wage and hour case in which the plaintiff recovered $49,508 in compensatory and punitive damages); *see also Bandoy v. Huh*, 1996 WL 675978 (Cal.Sup.1996) (awarding $73,680 in attorneys' fees in a wage-and-hour employee misclassification case in which the plaintiff recovered in excess of $200,000 in unpaid wages).

40. Here, Plaintiff, if successful, would be entitled to an award of attorney's fees that itself "more likely than not" would exceed $75,000.

### H. Alleged Punitive Damages

41. Plaintiff also seeks punitive damages against Defendant. (Compl., p. 15 (Prayer for Relief).) For purposes of calculating the amount in controversy, the Court must assume that Plaintiff will prevail on his claim for punitive damages. *See Davenport v. Mut. Benefit Health & Accident Ass'n*, 325 F.2d 785, 787 (9th Cir. 1963) (punitive damages must be taken into account where recoverable under state law); *Richmond v. Allstate Ins. Co.*, 897 F. Supp. 447, 449450 (S.D. Cal. 1995) (amount in controversy includes potential recovery of punitive damages award).

42. Verdicts in similar cases show that, when awarded, punitive damages in discrimination and wrongful termination cases typically exceed $75,000. *See, e.g., Ward,* 2011 WL 7447633 (awarding over $1,000,000 in punitive damage for each plaintiff in a discrimination and failure to prevent discrimination or retaliation (among other claims) action).

43. Therefore, while Defendant denies any liability, for the foregoing reasons, it is "more likely than not" that the amount in controversy exceeds $75,000, exclusive of costs and interests, as required by 28 United States Code section 1332(a).

### I. Venue

10

44. Venue lies in the United States District Court for the Eastern District of California pursuant to 28 United States Code section 84(d). Plaintiff originally filed this action in the Superior Court of the State of California, County of Placer, which is located within the jurisdiction of the United States District Court for the Eastern District of California. Thus, without waiving Defendant's right to challenge, among other things, personal jurisdiction and/or venue by way of a motion or otherwise, venue lies in this Court, Placer Division, pursuant to 28 United States Code sections 1391(a) and 1441(a).

**V.   NOTICE OF REMOVAL TO PLAINTIFF AND THE SUPERIOR COURT**

45. Pursuant to 28 United States Code section 1446(d), written notice of the filing of this Notice of Removal will be given promptly to Plaintiff and, together with a copy of the Notice of Removal, will be filed with the Clerk of the Superior Court of the State of California, Placer County.

46. This Notice of Removal will be served on counsel for Plaintiff. A copy of the Proof of Service regarding the Notice of Removal will be filed shortly after these papers are filed and served.

**VI.   PRAYER FOR REMOVAL**

Wherefore, Defendant prays that this civil action be removed from the Superior Court of the State of California, County of Placer, to the United States District Court for the Eastern District of California.

DATED: June 29, 2023                          Respectfully submitted,

                                              SEYFARTH SHAW LLP

                                              By: _____
                                                  Christian J. Rowley
                                                  Eric M. Lloyd
                                                  Bradley D. Doucette
                                                  Attorneys for Defendant
                                                  AIR INTERNATIONAL US, INC.

95879885v.1